THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO, DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 08 2004

JAMES W. McCORMACK, CLERK
By: _____ DEP. CLERK

PAUL A. CULBREATH                                                           PLAINTIFF

VS          CIVIL ACTION NO. 3:04CV00074 S(W)W

BONNIE HODGE, TRUSTEE OF HERMIT
HOLLOW REALTY TRUST, RICHARD
HODGE, ROBERT MACAULAY, AND
LEO MEMGWASSER, ANNETTE MEMGWASSER,
LENDAL ERBY                                                                 DEFENDANTS

**COMPLAINT** Case assigned to District Judge Wright
and to Magistrate Judge Forster

Now comes the Plaintiff, Paul A. Culbreath acting as Pro Se in his own behalf, has filed this Complaint against these Defendants' and hereby state:

1.  Plaintiff, alleges U.S. District Court has jurisdiction in this matter and there is subject matter jurisdiction under **U.S. Code > Title 28 > Section 1331,** and a Federal Question under **United States Constitution, Amendment XIV, Section (1), and under U.S. Code > Title 18 > Section 241 "Conspiracy against rights".** Complaint is justified here in this U.S. District Court, Jonesboro Division, under **U.S. Code > Title 42 > Section 1988 ; "Proceedings in vindication of civil rights, and U. S. Code > Title 42 > Section 1983; "Civil action for deprivation of rights.**

2.  Plaintiff, alleges this Complaint, arises out of Arkansas Circuit cases filed in Fulton Circuit Court, E-1998-152 the E-2000-114-2 an the U.S. District Court, the civil action cases 3:04CV19 SWW an 3:04CV61 GH .

1

( Hearing Transcripts of E-1998-152 case attached as Exhibit "1", and original Complaint E-1998-152 case attached as Exhibit "2", copy of Complaint E-2000-114-2 attached as Exhibit "3").

3.   Plaintiff, filed this Complaint in this U.S. District Court, seeking justice, and prays from this U.S. District Court vindictive compensatory damages, to be awarded for the intentional infliction caused by the extreme & outrageous conduct committed by these Defendants, and others under their employment. Their actions against Plaintiff have violated his civil rights, have caused pain, suffering and emotional distress by the intentional wanton malign acts done with malice, willfulness, wantonness, and outrage with the purpose to illegally land locked and block off the Plaintiff's property so to try and force the sale of his land at their set price. Defendant's have willfully, intentionally continued to violate the Plaintiff's civil rights under Federal law. Have violation **United States Constitution, Amendment XIV Section 1,** which gives each citizen legal rights to access his property for enjoyment of any right, hunt, harvest wildlife, or have free exercise on his property, which Plaintiff has a legal right an privilege to do as a United States Citizen.

4.   Plaintiff has owned 160 acres of land in Fulton County, which he purchased on Nov. 1st, 1991. He purchased this property from James an Majoria Deshazo, through their agent, Max Humplries who furnished copies of Escrow documents of David Hicks who's property was contingent Plaintiff. The Escrow Contract revealed 40 foot easement reserved across Hicks 160 acres of land so Plaintiffs property would have access. The easement was 1st recorded on Aug. 30th, 1989 (Book 15, Page 699) in a 1989 Escrow Contract. The 2nd Contract dated on Nov. 5th, 1990 for the whole 160 acres was not

recorded but placed in escrow at Bank of Salem, who was a licensed escrow agent hired by the Deshazo's. (Hicks 1990 Escrow Warranty Deed attached as Exhibit "4").

5.    Plaintiff alleges after Mr. James Deshazo death, in Sept. of 1996, that David Hicks listed his land for sale with Perryman Realty. On March 6th, 1997 Bonnie Hodge made offer to purchase 80 acres of Hicks land with special conditions, (no existing easements) on the land or she would not buy the land, Robert MaCaulay made an offer to purchase the remaining 80 acres. (Hodge's offer attached as Exhibit "5").

6.    Plaintiff alleges that promises and misrepresentations were made, by the realtor & seller and a conspiracy arose to committed unethical misconduct by attorney Carl Plumlee, who was also hired by Defendant, Hodge an MaCaulay. Attorney Plumlee, was paid for his service to make sure there were no existing easements at the time of the sale closings. Plaintiff, alleges he has the evidence an proof to prove that several violations of Federal Laws were committed by the Defendants and hired agents and others so to make the sale transactions.

7.    Attorney Plumlee, was an still is today the Fulton County Prosecuting Attorney, an District Judge in the 16th, Judicial District, an was the closing agent for the sale transactions. Plumlee along with wife owns Fulton Title Co. who handled the sale closings and also sold the Title Insurance for the property. Plumlee also represents Bank of Salem an owns a interest in this Bank and is on Board of Directors. The sale transactions were financed through this Bank, and all parties profited from the sales.

8.    Plumlee, before April 9th, 1997 called the widow lady Deshazo, asking where the original 1990 Escrow Warranty Deed was located. Ms. Deshazo has testified under oath, that she related the original Deed was in escrow at the Bank of Salem, and he

never discussed at that time the need to vacate the Plaintiff's easement so to make the sale closings. Plumlee, had no written permission, authorization or did the Bank of Salem, from Ms. Deshazo to release the Hicks Escrow file from the Bank so the Deed could be destroyed or changed. Plaintiff, alleges that on or before April 9th, 1997 the Bank of Salem, who was in charge for the safe keeping, intentionally with malice intent released this escrow file and allowed it destroyed by Plumlee, who was also their attorney, so a new revised Deed could then be prepared where changes were made that intentionally did not mention the reserved easement, to the remaining land.

9.  Attorney Plumlee, was acting in Defendants behalf, as well his own and others and it is easy for Defendant's now to state that had no knowledge of their attorney's actions. However the Court must realize that Plumlee was employed by them at the time and was acting in their behalf as well and they benefited, from this acts and what is imputed in him is also imputed in them, under **Vicarious Liability.** Hodge and MaCaulay testified in the Hearing in the E-1998-152 case on Nov.19th, 2001 they had no knowledge of what their attorney was committing, an they were never informed of any existing easements being used by the Plaintiff.

10.  Defendant, Bonnie Hodge, testified that on March 6th, that disclosers were made an representations by her agent Perryman and seller Hicks, that the existing right of way down the East side of the(SWNE) forty was not on Hicks property and that the road was used by a "Hunter" to access his property in the South. Hodge also remark seeing installed deer hunting stands on the right of way roads and asked who they belonged to, which Hicks and Perryman stated the "Hunter" owns them, which common sense should put someone on notice that someone else was using the roads beside Hicks as access.

Hodge and MaCaulay saw these deer stands on March 6th, 1997 and saw them also a year later. Defendant's were concerned enough to make a special condition in offer wanting no existing easements and hired Attorney Plumlee for this service. Plaintiff/ alleges that the damaging testimony and evidence which was presented which came out of the Hearing E-1998-152 case displays that a conspiracy was created on March 6th, 1997 between Perryman and Hicks and possibly Hodge, and who had the influence and power to make it happen, Carl Plumlee, with the help of others.

11.     Plaintiff, filed a ethic violation Complaint against Plumlee with the Ark. Supreme Court Office of Professional Conduct Commission on Oct. 4th, 2001 Commission took action on Sept. 23rd, 2003 found Plumlee guilty of Model Rules violations on Dec. 10th, 2003. Plumlee was found guilty of violating Model Rule 3.3 (a) (1) and Rule 4.1 (a) and Rule 8.4 (a), was only Reprimanded and fined for his mal-practice. ( Commissions Findings and Orders are attached as Exhibit "6"). Plumlee is a dishonest and untrustworthy licensed attorney, by his unethical acts. Plaintiff alleges that Plumlee, committed the following U.S. Federal Code Violations on behalf of his hired employers Bonnie an Richard Hodge, and Robert MaCaulay.

(1)     Committed fraud, by calling the widow lady Deshazo on April 9th, 1997 Ms. Deshazo, who was deceived into coming to Plumlee's office thinking she was getting pay off on the Hicks contract. She has testified when arriving she was presented with two revised documents to sign, by Plumlee's personal secretary, who never explained that these documents were to vacate the reserved easement to Plaintiffs land. **Clearly violation of U.S. Code, Title 18, Section 1346; "A scheme or artifice to defraud" (To deprive another of the intangible right of honest services). Also a Federal violation**

of U.S. Code, Title 18, Section 1343; "Fraud by Wire" (Whoever, having devised by scheme to artifice to defraud by means of false pretenses, representations and causes to be transmitted by means of wire).

(2) Plumlee, acting on behalf of his clients, went into the Bank of Salem, and intentionally with malice intent took the original Hicks escrow file from the Bank, without the permission or knowledge or authorization of Ms. Deshazo and destroyed the original Deed and willfully prepared a new revised Deed and made unauthorized changes. **Clearly a Federal violation of U.S. Code, Title 18, Section 1344; "Bank Fraud". (2) (To obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, by means of false or fraudulent pretenses, representations, or promises). The Nov. 5th, 1990 original Hicks Warranty Deed was property belonging to James an Majoria Deshazo, who hired the Bank of Salem, as their a licensed escrow agent. The Bank today no longer has and escrow service, directly because of this criminal act, by Attorney Plumlee.**

(3) Plumlee on July 14th, 1998 willfully with malice intent, prepared a false statement after a Complaint had been filed against Perryman Realty by the widow lady Deshazo, on June 22nd, 1998 and mailed it in to the Ark. Real Estate Comm. The Complaint was concerning the illegal vacating of the Plainitff's easement and the alleged fraud committed against Ms. Deshazo, by Perryman's agents. Danny Perryman testified under oath during the Hearing of the E-1998-152 case that he at no time before the sale closing of April 11th, 1997 that he never had any personal conversations with Ms. Deshazo about the need to vacate the recorded an reserved easement across Hicks land. Plumlee had stated in the reply answer which he prepared on Perryman's behalf that Perryman did

have this conversation with Ms. Deshazo and she was in agreement with it. Plumlee had Danny Perryman and Barbara Perryman signed this reply answer form and it was then mailed through the U.S. Mail Service to the Ark. Real Estate Comm. to mislead them in their on going investigation into the matter, which caused them not to take any action against Perryman Realty, which also benefited the Defendants as well. **Clearly a Federal violation of U.S. Code, Title 18, Section 1341; "Mail Fraud and misrepresentations", (Frauds and swindles).**

(4)    Plaintiff on March 1st, 1998 confronted the Defendants, Bonnie & Richard Hodge an presented an gave copies of documents with proof that there had been existing easements which were reserved in two official escrow Contracts of David Hicks. The Defendant's defense was they did not know any existing easements existed. Defendant's also refused to take any legal action against their hired agents or attorney, instead they conspired to go along with the criminal and unethical actions that Plumlee had committed also in their behalf. Plaintiff alleges these Defendants, with help an protection from their attorney, then themselves committed willful, intentional malign acts to block the roads and land lock the Plaintiff's property, so to prevent him from hunting and harvesting any wildlife on his own property during the hunting seasons, and try and force Plaintiff to sell his land. Plaintiff alleges the proof of this is on April 3rd, 1998 the Defendant's Hodges mailed Plaintiff a letter offering to buy his land for $375.00 per acre so to settle the dispute over the vacating of his easement, the Plaintiff's property at the time was worth $750.00 per acre, Plaintiff refused their offer on July 10th, 1998. Then on July 14th, 1998 Defendants instructed their attorney Carl Plumlee, also the Fulton County Prosecutor to mail a threatening letter instructing Plaintiff, Paul Culbreath to stop using the reserved

easement road to his land or he would be charged with criminal trespassing and dealt with by the law. **Clearly a Federal violation of U.S. Code, Title 18, Section 241; "Conspiracy against rights". (If two are more persons conspire to injure, oppress, threaten or intimidate any person in any state, in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the Untied States.** (Hodge's letter on April 3rd, 1998 attached as Exhibit "7", Plumlee's threatening letter on July 14th, 1998 attached as Exhibit "8").

12.     Plaintiff, contacted Ms. Deshazo on July 14th, 1998 informing her of Plumlee's threatening letter, and he was going hire an attorney to file a civil Complaint to have his easement put back to his property. Ms. Deshazo, related she had mailed the Perryman's and Plumlee's (who were supposedly longtime trusting friends) a personal letter on March 26th, 1998 informing them of her feelings of being deceived, into unintentionally harming Plaintiff's civil rights and the easement to his property. (The personal letter of Ms. Deshazo is attached as Exhibit "9"). Ms. Deshazo related that she and her son, Ed Deshazo, had confronted Plumlee at his office on March 23rd, 1998 asking him why was the original Hicks Deed changed, Plumlee's remarks **"To make the sale!** buyers would not buy the land with existing easements.

13.     Plaintiff, then hired Attorney Dick Jarboe in Aug. of 1998 to file civil Complaint so to have his easement put back to his land. Jarboe mailed a letter to the Defendant's attorney, Carl Plumlee, on Aug. 20th, 1998. Plumlee finally responded on Oct. 12th, 1998, where he stated that Defendant's Hodge and MaCaulay were on prior notice of the recorded easement of 1989, but no others (Plumlee's Oct. 12th, 1998 letter attached as Exhibit "10"). This statement by Plumlee, shows that these Defendant's were

on notice and was knowledgeable of prior existing easements which existed on Hicks property prior to the sale closings of April 11th, 1997. Hodge and MaCaulay however have testified that they were not, and that their attorney misrepresented them. Plaintiff alleges that they conspired with others and also refused to take any legal action against him, only to help protect and try to keep him out of any trouble for the criminal violations of the law which he clearly committed, which was also on their behalf.

14. These Defendant's knew full well there was a outright conflict of interest with Plumlee trying to also be their attorney as well and it is alleged now by the Plaintiff that Plumlee, and these Defendant's have committed outright **Obstruction of Justice and Public Corruption.** Plaintiff's attorney Dick Jarboe was taking no action in the Plaintiff's behalf, an on Oct. 1st, 1998 when Plaintiff arrived at his property he discovered that the adjoining land owner, Leo Memgwasser, and Lendal Erby had willfully an intentionally with malign, wanton acts had criminally damage Plaintiff's property with their dozer and had intentionally set fire to the Plaintiff's property destroying Plaintiff's camp site and thousand of dollars of personal property. Also destroyed over 15 acres of the Plaintiff's property and the timber, which was taken to Missouri and sold for profit.

15. Plaintiff then contacted the Fulton County Sheriff, Lloyd Martz informed him what had taken place and asked for a criminal investigation to be conducted which the Sheriff refused to do, cause of Plumlee's involvement and he knew that Plumlee would block the investigation being the Fulton County Prosecutor. Plaintiff, contacted Plumlee's office to informed him of the criminal acts he refused to act. Plaintiff, then contacted Don McSpadden, the Prosecutor over the 16th, Judicial District, he also refused to take any action on the Plaintiff's behalf. Plaintiff then sold off part of his land so to be able to

afford to file another civil Complaint, which Attorney Dick Jarboe prepared and filed on Oct. 16th, 2000, the civil docket E-2000-114-2 case.

16.     Plumlee, again as a direct conflict of interest on his part, became the attorney for the Defendant, the Mengwasser's. Jarboe received a letter dated on Nov. 7th, 2000 from Plumlee informing him he was going to represent the Memgwasser's in the Complaint, knowing full well it was a outright conflict of interest on his part, especially when he knew that criminal and felony violations of the law had been committed by them. Plumlee also states in this letter, that for the Plaintiff, Culbreath to reframe from cutting the illegal fence which was installed over Plaintiff's claimed property. (Plumlee's Nov. 7th, 2000 letter attached as Exhibit "11"). Also Plumlee, prepared another letter on Nov. 7th, 2000 informing Jarboe that Defendant Hodge, had been informed that Plaintiff, Culbreath may be interest then in selling his land, and they would like to make him an offer. (Plumlee's letter of Hodge's offer attached as Exhibit "12"). Attorney Jarboe at that time tried to persuade Plaintiff, Culbreath to sell his land, an to drop the E-1998-152 case and then pursue just the E-2000-114-2 case, which would have benefited Mr. Plumlee. Plaintiff, refused Attorney Jarboe's advice an then went to search for another attorney to take over. Jarboe had never filed any Motions in Plaintiff's behalf or tried in anyway to get his access by filing for a Court injunction so he and his family could be able to access their property. In fact Jarboe never in the 2 ½ years he never took any actions in the Plaintiff's behalf, and Plaintiff, alleges now that Jarboe and the other involved attorney's also conspired in a cover up to try and protect Plumlee for the mal-practice he committed.

17.     Plaintiff, then hired Attorney Clyde Eric Hance of Batesville, Ark. to take over the Plaintiff's cases for Attorney Jarboe, in March of 2001. Hance, finally received a

Court date setting in the E-1998-152 case for Nov;. 16th, 2001, he was also to have filed a Motion seeking to have Plumlee, recuse off the E-1998-152 case but never did. Honorable Judge John Harkey was the assigned judge to hearing E-1998-152 case, Plaintiff also alleges now that Judge Harkey showed nothing but bias during the whole Trial Hearing towards the Plaintiff and his Complaint.

18.    On Nov. 16th, 2001 the Hearing in the E-98-152 case begin, testimony was very damaging to the Defendant's and their actions and of their employees, especially Attorney Carl Plumlee. The most damaging was the fact that a false and misleading reply answer was prepared and mailed into the Ark. Real Estate Commission by Plumlee on behalf of Perryman Realty. In his reply answer Perryman Realty was to have discussed the easement problem with Ms. Deshazo before April 9th, 1997 and that she was to have been in agreement with it, which turned out to be false and incorrect. Perryman stated during his Trial Hearing testimony that he at no time before the sale closing date of April 11th, 1997 did he ever have any discussions with Ms. Deshazo about vacating any easements. Plumlee, stated during the questioning of Ms. Deshazo, that he was the person who called and disclosed this information with her and informed her there was a easement problem and that the buyer would not buy the land with and existing easement. Plumlee, however in the sworn affidavit he made to the Ethic Commission on Oct. 24th, 2003 he states now that he at no time never had any discussions with Ms. Deshazo about vacating the reserved easement, he states now he thought Perryman's had done that, in Ms. Deshazo's trial testimony he stated several times during the actual trial that he was the one who discussed this with her, which was then false and misleading. (Reference to the Trial Transcripts of Deshazo's testimony in he E-1998-152 case).

19. Defendant, s Bonnie Hodge, and Robert MaCaulay also testified during the Hearing that they also hired Plumlee's services who was represented the interest of Perryman Realty, Fulton Title Co. and the Bank of Salem. These Defendants, should be educated enough to know that there was a conflict of interest on Plumlee's behalf here. In trying to represent all parties in their common interest were somewhat different, depending on wither are not there were existing easements on the land. Buyers had already stated they would not buy the land if there were existing easements, when in fact there were at the time, two official documents which mentioned easements, and according now to all statements all were on notice of them on and before April 11th, 1997 including these Defendant's.

20. Plaintiff, alleges that Plumlee had 3 against 1 here, and who stood to lose or gain the most if the sales did not close. Perryman Realty, received some $10,000 commissions, Hicks profited some $43,000 from these two sales. Fulton Title Co, received fees for the closing and for selling the two Title Insurance policy's. The Bank of Salem financed the two sale transactions and Plumlee's received his attorney fees and was also paid a fee to make sure there were no easements on the property, he has supposedly also been paid attorney fees represent the Defendant's in the 6 1/2 year old lawsuit. The Defendant's, Bonnie an Richard Hodge did not want anyone crossing their property, easements or not, and legal or not has for 6 ½ years now denied the Plaintiff his legal access to his land and has had Plumlee's help & influence and by the Memgwasser's criminal destruction of part of the easement road has also kept the Plaintiff from being able to enjoy or hunt on his land, which is a violation of his civil rights.

21. Judge Harkey, however heard very damaging evidence against the

Defendants and Attorney Plumlee, and completely ignored it. On Jan. 16th, 2002 Judge Harkley filed his Ruling Degree on the E-1998-152 case, awarding the verdict to Plumlee, and the Defendant's. Plaintiff, appealed the case to the Ark. Court of Appeals an won the appeal on Dec. 23rd, 2002. The case was reversed and remanded back to Judge Harkey for further action, the Appeals Court also ruled that the Plaintiff did in fact have a easement by necessity across the MaCaulay and Hodge lands. Judge Harkey, has for over a year refused to act on the appeal taking no action on the case, has now recuse himself off the case and the others which are pending, the Defendant's defiantly refuse to still allow the Plaintiff his legal access back to his land. The Plaintiff, cannot and has not been able get any justice either from the Arkansas State Circuit Courts or from the Fulton County Sheriff's Office. (Judge Harkey's Degree attached as Exhibit "13", the Appeals Courts Ruling attached as Exhibit "14").

22.     Plaintiff, alleges since winning his appeal in the E-1998-152 on Dec. 23rd, 2002 that these Defendant's have continued to threaten and have intentionally, with willful malice intent deny the Plaintiff his legal access to his property. The Defendant's Leo and Annette Memgwasser, and their employee, Lendal Erby has intentionally, willfully continued to damage the property and criminally trespassing and running their cattle over on the Plainitff's property. Plaintiff, also alleges that these Defendant's willfully hired the services of Attorney Carl Plumlee, on the advice of Danny Perryman of Perryman Realty. Perryman Realty was the agent who sold the Memgwasser's their land in July of 1996, by their sworn testimony on Aug. 30th, 2002 at a Deposition Hearing. (Deposition Testimony Transcripts of Leo Memgwasser attached as Exhibit "15", Testimony of Annette Memgwasser Exhibit"16", and of Lendal Erby Exhibit "17").

23.	Plaintiff, also alleges that there was a conspiracy by Attorney Carl Plumlee and also Danny Perryman in a combined effort with others to try and get Plaintiff, to sell out his property and to drop the E-1998-152 lawsuit. With the help and influence of Plaintiff's attorney at the time Dick Jarboe, who ever tried to buy Plaintiff's property himself, if he would drop the E-1998-152 lawsuit which would have prevented any investigations into Plumlee's actions.

24.	It is also alleged that the Memgwasser case, when Plumlee, took the representation, that he knew full well at the time it was a outright conflict of interest on his part to do so. Plaintiff, alleges it was because of the statements and representations that Perryman made on March 6th, to Defendant, Bonnie Hodge, that on the East side of the SWNE forty where the existing road was located, it was not on Hicks land at the time, which had to be the property of the Memgwasser which was false and incorrect. Also Plumlee's statements he made in his Oct. 12th, 1998 letter to Attorney Jarboe, of there being a existing easement road across the property belonging to Memgwasser, and had been used for many, many, many, years as access into the Culbreath property, and that Plaintiff had a legal right to use only 2 years later it was then destroyed by Memgwasser. Also on Aug. 30th, 2002 Defendant, Erby testified under oath, that before the intentional and willful destruction that he and others committed to the Plaintiff's property in mid 2000, that he had a conversation with Danny Perryman and others. It is also alleged by his testimony given, of wanting to install a new fence line when there already was and old existing fence line that was in good shape, on the Plaintiff's property which had been there for many, many years and also the need for a survey to be conducted on the East side of the Plaintiff, Culbreath's property in the NWNE tract.

25. Plaintiff, also alleges that at no time did Defendant, Erby or the Memgwasser's ever make any personal contact informing Plaintiff of their intentions. These Defendant's Memgwasser or Erby never went and hire the services of a licensed attorney finding out what the law was before the illegal and criminal damage to the Plaintiff's property. They filed no petition or civil Complaint in a Court of law or get or win any Court judgment or obtain any signed Court Order by a Circuit Judge in the 16th, Judicial District giving them any legal right under the law just to then go and destroy and steal or take possession of any of the Plaintiff's property, without his permission or authorization, to make their outrageous conduct legal by the law.

26. Plaintiff, after 2 years finally got help through the U.S. Attorney's Office, by getting the Arkansas Forestry Commission to conduct a criminal investigation into Memgwasser and Erby actions. In Jan. of 2003 the criminal investigator, John Murphy was at least successful in getting arrest warrant issued against Defendant Erby for criminal reckless burning charges to the Plaintiff's property and camp site destruction, which is a felony. Those criminal charges or now pending against Erby in the Criminal division of the Fulton County Circuit Court, no action as of yet has been taken against him, and now the criminal files have been lost, which will also hinder this case. Plaintiff, however was unsuccessful in getting any criminal charges filed against the Memgwasser's for their involvement or any others, who were involved.

27. Plaintiff, alleges in this U.S. District Court, that his civil rights have been violated by these Defendant's by the intentional infliction of emotional distress, and the extreme & outrageous conduct which the Defendant's Memgwasser and Erby have caused by their malign acts which Plaintiff feels was committed with malice intent to try and force

Plaintiff to sell his land at their set price. Memgwasser through Erby offer to purchase the Plaintiff's property for $400.00 per acre, when it was worth twice as much at the time. Plaintiff, alleges that these Defendant's were also defiant in their acts cause of their connection with already having Attorney Carl Plumlee as their hired attorney.

28. Plaintiff, prays from this U.S. District Court that he be awarded vindictive damages for the intentional torts and civil rights violations willfully committed by these Defendant's Leo and Annette Memgwasser and Lendal Erby. They have intentionally committed emotional and dignitary harms as well to the Plaintiff and his civil rights and to his property. Defendant, Richard Hodge was aware and confronted Lendal Erby and others on the day of the destruction to Plaintiff's land and instead of trying to prevent or notify the Plaintiff, or Attorney Carl Plumlee who had the power of his position to have stop the criminal acts, but Hodge took no action, Hodge then allowed and permitted the encroachment over his property to destroy the easement road which led to Plaintiff's 160 acres of land no road at all exists to Plaintiff's 160 acres of property as of today. Erby testified to this on Aug. 30th, 2002 at a Deposition hearing on the E-2000-114-2, that Hodge came and confronted him and others in his party and asked what Erby was doing, and after having a discussion about the matter of installing new fence lines and doing new survey, Hodge permitted them to then encroach over on Hodge's property and then destroy the existing easement road which Plaintiff had a legal right by law to use.

29. Plaintiff also state and alleged that from July 14th, 1998 when he was then illegally and intentionally blocked off from using his legal easement roads to his property, by the Defendant's Hodge's and MaCaulay by them placing several obstructions in the middle of the roads in several locations so to hinder and deny the Plaintiff access to his

land, they also impeded his hunting on his other property in the NWNE tract, since 1998 thru 2003.

30.     On Oct. 3rd, 2003, Paul Culbreath and his son and others were hunting on their front property in the NWNE tract and were criminally assaulted by Richard Hodge, who at the time was intentionally trying to impede the hunting of Jeff Culbreath. A altercation in sued, where Richard Hodge assaulted Plaintiff, Paul Culbreath, causing him to fall, and in defense of his father, Jeff Culbreath stopped Richard Hodge from trying to kick Paul Culbreath in the head area. Defendant Hodge then tried to assault Jeff Culbreath, who in self defense injury Richard Hodge and removed him from the Plaintiff's land. There was a eye witness to this altercation Mr. James Gowan, who has made a sworn affidavit as to what happened as well as sworn affidavits by Paul and Jeff Culbreath. Defendant, Bonnie Hodge had left the area to go then and called her attorney, Carl Plumlee at home. Plumlee in turned again as a Conflict of interest on his part, called the Fulton County Sheriff's office and informed them not to conduct any criminal investigation in the matter, on Plaintiff's behalf.

31.     Attorney Plumlee, then intentionally called in a Ark. State Police CID Investigator from Harrison, Ark. to conduct his criminal investigation into the matter. This criminal investigator, has a very close relationship with Carl Plumlee and by all reports, also conducts over 90 % of the criminal investigations in Fulton County. This CID investigator is now trying to get the Plaintiff, Paul Culbreath and his son Jeff Culbreath, criminally prosecuted for supposedly assaulting the Defendant, Richard Hodge, regardless that Hodge, who at the time was criminally trespassing upon the Plaintiff's property, and assaulted Paul Culbreath first. Even with a eye witness who saw the whole

altercation, of the assault, the case was sent to Don McSpadden, who recuse himself and assigned a special Prosecutor Don Brown to pursue criminal charges against Plaintiff, Paul Culbreath, for protecting his own property and protecting himself.

32.    Defendant, Richard and Bonnie Hodge have since July of 1998 have been committing criminal and intentional damage and also impeding the Plaintiff's deer hunting which is a Arkansas State law violation, Statue # 5-71-228 (Obstruction of shooting, hunting fishing or trapping activities). (a) It is unlawful for any person to willfully obstruct or impede the participation of any individual in the lawful activity of shooting or hunting in this state, but have not been able to get any action taken against them cause of Plumlee's corruption in Fulton County.

33.    Plaintiff, Paul Culbreath went to the Fulton County Sheriff's office on Oct. 7th, 2003 and signed and fill out sworn affidavits for arrest warrants to be issued and served on Bonnie and Richard Hodge for these offences, no action was ever taken by the Sheriff's office or the District Court, in Salem, Ark. Plaintiff, called Sheriff Lloyd Martz about this matter, and would not comment on it, how the documents gotten misplaced or was destroyed. At any point the affidavits and warrants were never served on the Defendant's Hodge for their willfully and criminal acts

34.    Plaintiff, Paul A. Culbreath prays from this U.S. District Court that it holds Bonnie & Richard Hodge and Robert MaCaulay and Leo & Annette Memgwasser and Lendal Erby liable for their actions under the Federal Tort law "Vicarious Liability" also by the actions of their hired attorney, Carl Plumlee. They should also be held liable for their actions for their outrageous conduct, which goes beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community for

the civil rights violations which they have also committed by their outrageous conduct. These Defendant's by their willful and intentional acts this U.S. District Court has the Subject matter jurisdiction to hear this case **under the U.S. Code, Title 28, Part IV, Chapter 85, Section 1343; (a), 1,2,3. Pertaining to civil rights violations.**

WHEREFORE; the Plaintiff, Paul A. Culbreath prays to this U.S. District Court that he be granted Vindictive and Compensatory damages in the amount of **$5,000,000.00**, for the willful and intentional malign acts which were committed with malice intent and which has caused pain and suffering as well as emotional distress, and the threats which have now been made against the Plaintiff, and his family, this should send a message to these Defendants that their malign and malice acts and threats will not be tolerated in this day and time.   Plaintiff also prays that punitive damages be granted if allowed by the Court and all other proper relief which he is entitled.  Plaintiff also requests under his rights of Federal Rules of Civil Procedure, Rule 38, (b) demand a trial by jury.

Respectfully submitted,

Paul A. Culbreath, acting as Pro Se
2304 Heath Lane
Jonesboro, Ark. 72401
870-933-6519

By _Paul A. Culbreath_

Paul A. Culbreath, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing instrument will be served on the named Defendants or their attorneys of service. On this _8th_ day of _March_, 2004.

David Ethridge
Attorney at law
P.O. Box 724
Mountain Home, Ark. 72654

Robert J. Gibson
Attorney at Law
P.O. Box 1700
Jonesboro, Ark. 72403

By _/s/ Paul A. Culbreath_
Paul A. Culbreath, Pro Se